UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT HAMMOND

IN RE:                                )
MATTHEW LAUDIG                        )
                                      )       BANKRUPTCY NO. 19-22676
                                      )       CHAPTER 13
                    Debtor            )

## MEMORANDUM OPINION AND ORDER

### I.
### STATEMENT OF PROCEEDINGS

This Chapter 13 Case is before the Court on the Motion filed on January 28, 2020, for relief from stay and abandonment by Brian Hecimovich ("Hecimovich") and an Objection by Hecimovich to Confirmation to the Plan of the Chapter 13 Debtor Matthew Laudig ("Debtor") filed on January 28, 2020.

The stay relief Motion alleges, in part, that the Debtor is in title to that Real Estate commonly known as 807 E. Ridge Road, Gary, Indiana ("the Real Estate") and that on March 21, 2019 Hecimovich became an Assignee to a Lake County Commissioner's tax sale certificate as to the Real Estate.

The Motion further alleges that the date to redeem the tax sale certificate expired on July 19, 2019. The Motion further prays for relief from the automatic stay so that Hecimovich, as a secured creditor, may exercise his State Law Rights with respect to the Real Estate, including his right to a deed to the Real Estate pursuant to the Indiana tax sale scheme.

The Objection to Confirmation by Hecimovich is based on the tax sale certificate assigned to him, and alleges that the Plan did not adequately value the Real Estate, to be in excess of $3,000.00; failed to provide an adequate interest rate; and, that the Plan failed to fund the costs associated with the Real Estate, i.e. future Real Estate taxes and maintenance.

At the Pre-Hearing Conference held on both the Motion and the Objection by Hecimovich, Hecimovich and the Debtor stipulated there was no need to submit evidence, as these contested matters appeared to be questions of law only, and that these contested matters be submitted as an Agreed Case without

1

an evidentiary hearing. See Order dated March 18, 2020 (Docket No. 76).

Pursuant to that Order the parties were ordered to file a stipulation of facts and legal issues to be decided.

On April 7, 2020 the parties filed their Stipulation of Facts and Legal Issues (Docket No. 78). The Stipulation provided as follows:

### Facts

1. The Debtor filed for Chapter 13 Bankruptcy Relief on September 25, 2019 and listed real estate located at 807 E. Ridge Road, Gary, Indiana ("Real Estate") as an asset of the bankruptcy estate.

2. On September 11, 2018, the Real Estate was sold to the Lake County Commissioners via a Tax Sale Certificate. (Tax Sale Certificate- Exhibit "A").

3. On March 21, 2019, the Real Estate was sold pursuant to I.C. 6-1. 1-24 by the Lake Couny Commissioners. The Lake County Commissioners assigned the Tax Sale Certificate to the Creditor/Tax Purchaser. (Assignment of Commissioner Owned Tax Sale Certificate- Exhibit "A")

4. The Assignment served upon the Debtor indicated that the redemption period would expire on July 19, 2019.

5. The Debtor did not redeem the real property from sale prior to July 19, 2019. The Debtor is not stipulating that the tax sale statute has been complied with and does not waive his right to assert compliance with the Indiana tax sale statutes as it relates to notices and redemption period.

6. On August 20, 2019, Creditor/Tax Purchaser filed a "Verified Petition for Order Directing the Auditor of Lake County, Indiana to issue Tax Deed". (Verified Petition- Exhibit "B")

7. The hearing on Creditor's/Tax Purchaser's "Verified Petition for Order Directing the Auditor of Lake County, Indiana to issue Tax Deed" was set for September 26, 2019. (Order Setting Hearing- Exhibit "C")

8. The hearing on September 26, 2019 was not conducted, no tax deed was issued to Creditor because the matter was stayed by the Debtor's filing of his bankruptcy petition.

9. Debtor had not redeemed the real property from sale prior to the filing this bankruptcy petition, and the Real Estate remained in the name of the Debtor as of the date of the filing of the bankruptcy petition. (See the Lake County Property Card- Exhibit "D").

### Legal Issues

If the redemption period has expired under the Indiana tax sale statutes, whether the Debtor, whose real property was sold at the Indiana Tax Sale, has the right to treat the Tax Purchaser's claim and the real property in a chapter 13 plan when, under Indiana Law, the Tax Purchaser has not obtained a tax deed prior to the commencement of the debtor's bankruptcy.

II.

A.

The Position of the Debtor

2

The Debtor on June 10, 2020 filed his Memorandum (Docket No. 81) and his Reply Brief on June 24, 2020 (Docket No. 89).

The Debtor asserts that although the redemption date to redeem the Tax Sale Certificate expired prior to the Chapter 13 Petition date of September 25, 2019, and Hecimovich had filed for a tax deed pursuant to I.C. 6.1-1-24, a hearing on the Petition for a tax deed had not been held, nor had a tax deed been issued. Thus, the Debtor asserts that he was still the owner of the Real Estate subject to the lien of Hecimovich and can be treated by the Debtor's Plan.

The Debtor cites the case of In Re Leonard, 2013 WL 2237520 (Bankr. S.D. Ind. 2013), in support of his position, In Leonard, the property was sold at a tax sale on August 31, 2011, and thus the debtor had until August 31, 2012, to redeem the property. The Debtor filed a Chapter 13 Petition on May 25, 2012 or prior to the redemption date. The Debtor filed an Adversary Proceeding for injunctive relief to stay the transfer of the Real Estate to the tax sale purchaser by virtue of a tax deed.

The Leonard Court granted the Debtor's Motion for Summary Judgement and enjoined the tax sale purchaser from taking any further steps and pursuant to the Indiana Statutory Tax Sale scheme to obtain the issuance of a tax deed for the failure of the Debtor to redeem on or before August 31, 2012. The Leonard court also decided that the Debtor could treat the holder of the tax lien certificate as a secured creditor pursuant to a Chapter 13 Plan as provided by §1322(b)(2). The Leonard Court held that inasmuch as Indiana Case Law provides that the issuance of Tax Sale Certificate does not immediately transfer title, the purchaser acquires a lien pursuant to I.C. 6-1.1-24-9(b), and thus the lien may be treated by the debtor's Plan.

The Debtor also cites In Re Robinson, 577 B.R. 299 (Bankr. N.D. Ill. 2017) in support of his position. Robinson implicated the Illinois Tax Sale scheme. In Robinson, the debtor filed a Chapter 13 Petition one day prior to the redemption date. The Court held that after the expiration of the redemption period but prior to the issuance and recording of a tax deed, the debtor could treat the tax sale purchaser as a secured creditor pursuant to his plan. The Robinson Court cited In Re Lamont 740 F.3d 397 (7th Cir. 2014). In Lamont the Seventh Circuit held that a non-recourse tax Lien represented by a certificate of purchase, is a secured claim that could be

3

treated under the debtor's Chapter 13 Plan Id. 740 F.3d at 409-410. In Lamont, the debtor also filed his chapter 13 petition prior to expiration of the redemption date.

## B

### The Position of Hecimovich

Hecimovich cites the unpublished Memorandum Opinion and Order of this Court in the case of In Re Weathersby, Case No. 12-23347 dated March 5, 2012, which granted a Motion for Stay Relief and Abandon by CPT Rev LLC. In Weathersby, this Court decided that the creditor, who held a statutory tax lien certificate, could proceed in the state court to obtain a tax deed. In Weathersby this Court held that inasmuch the debtor's one year statutory right of redemption had expired prior to the Chapter 13 Petition date pursuant to I.C. 6-1. 1-25 (4)(a)(ii), as extended by §108(b), the cure provisions of §1322((b)(2), §1322(b)(5), and §1325(a)(5) were not applicable beyond the 60 day period, as set out in §108(b). Thus, the creditor had "shown cause" that the Motion for Stay Relief shall be granted; citing In Re Murray 276 B.R. 804 (Bankr. N.D. Ill 2002) with approval. Id. at p.21. A copy of this Court's decision in Weathersby is appended hereto as Appendix A, and is incorporated herein by reference into the Opinion of this Court in this case.

Hecimovich properly notes the cases cited by the Debtor all involved factual scenarios where the debtor filed a Chapter 13 petition prior to the expiration of the statutory redemption date, while in the case before the Court, the Debtor, as in Weathersby, filed his Chapter 13 Petition after the statutory redemption date.

### III.

### Conclusions of Law and Discussion

No objection was made by counsel to the subject-matter jurisdiction of this Court as to this matter. The Court finds subject-matter jurisdiction to be present, pursuant to 28 U.S.C. §1334(b), and that this contested matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

In reaching its decision, the Court must address the Opinion of the Seventh Circuit in the case of In

Re Lamont 740, F.3d 397 (7th Cir. 2014), which was decided after this Court's decision in Weathersby. In Lamont, the Seventh Circuit held that a tax lien obtained through a tax sale pursuant to the Illinois tax sale scheme could be treated as a secured claim under a chapter 13 plan pursuant to §1322(b)(2) as the time to obtain and record a tax deed had not expired when the Chapter 13 petition was filed and did not affect the treatment of the secured claim in the debtor's plan. Id. 740 F.3d at 409-410.. The Lamont court stated as follows:

> [T]reating property sold at a tax sale the same way as property sold at a foreclosure sale ignores the differences between the transactions. Under Illinois law, a mortgage foreclosure sale should occur only after the statutory right of redemption has expired. *Colon v. Option One Mortgage Corp.*, 319 F.3d 912, 920 (7th Cir. 2003) (citing 735 ILCS 5/15-1507(b)), Therefore, after a foreclosure sale, "assuming that the redemption period has run, the purchaser at that sale has a presumptive right to eventual ownershup of the property," subject only to confirmation that all formalities were obeserved. *Id.* at 921. Accordingly, subsequent to a foreclosure sale "the only property interest which the [debtors have] in the real estate after the foreclosure sale [is] the [statutory] right of redemption," [t]he real property [] did not become part of the estate." *Matter of Tynan*, 773 F.2d 177, 179 (7th Cir. 1985). Under those circumstances, it is appropriate to lift the automatic stay so that the purchaser may pursue the ministerial steps to obtain legal title to property that he already has the right to own.
>
> The circumstances may be similar in the tax sale context when a debtor files a bankruptcy petition after the redemption deadline has passed, *see In re Bates*, 270 B.R. 455, 469-70 (Bankr. N.D. Ill 2001), but the circumstances are different if the petition is filed while time reamins to redeem. Before the redemption period has expired, a property subject to a Certificate of Purchase still belongs to the delinquent tax-payer, legally and equitably.

Id. 740 F.3d at 405-406

The Seventh Circuit in Lamont was thus careful in drawing a distinction between the filing of a chapter 13 petition before the redemption period had expired, and when the chapter 13 petition is filed after the redemption period had expired. In so doing, the Lamont court cited In re Bates, 270 B.R. 455-469-470 (Bankr. N.D. Ill. 2001). Id. 740 F.3d at 406. The Bankruptcy Court in Bates stated as follows:

> The effect of expiration of the redemption period prior to a bankruptcy filing. The discussion of bankruptcy and Illinois tax sales, set out above, considers only the situation of a bankruptcy case filed during the period of redemption allowed by Illinois law. If a bankruptcy case is filed after the expiration of the redemption period, the

situation is different. After the redemption period expires, the landowner can no longer avoid the issuance of a tax deed by paying the redemption price. In effect, the tax purchaser has a right to the debtor's property, contingent only on the tax purchaser's complying with the necessary procedures within the required time. Thus, transfer of the property to the tax purchaser is no longer a consequence of nonpayment by the debtor, and payment is no longer an alternative form of relief to transfer of the property. In effect, a transfer of the landowner's rights occurs at the end of the redemption period if a bankruptcy is not in place. Under these circumstances, there is no "claim" (or "right to payment" under § 101(5) of the Bankruptcy Code) that can be treated in the bankruptcy case.

        With no potential for claim treatment in a bankruptcy filed after the expiration of the redemption period, the impact of the automatic stay is also different. Although the stay would still apply to prohibit actions to obtain a tax deed (as an action to obtain control over property of the estate), there would be cause for the stay to be terminated by the bankruptcy court under § 362(d), since the creditor could not be required to accept payment through the bankruptcy case in lieu of its right to the property. *Cf. In re Wells Properties, Inc.* 102 B.R. 685, 691 n. 3 (Bankr. N.D. Ill 1989) (once the tax purchaser's right to a deed is fixed, the purchaser should have "little difficulty" in obtaining relief from the automatic stay).

<u>Id.</u> 270 B.R. at 469-470 (footnotes omitted)

The Court concludes that its Memorandum Opinion and Order in <u>Weathersby</u> and appended hereto, and the decision of the Bankruptcy Court in <u>In re Bates</u> were correctly decided. Accordingly, inasmuch as the statutory period to redeem the tax sale certificate held by Hecimovich had clearly expired <u>prior</u> to the filing of the Debtor's Chapter 13 Petition pursuant to the Indiana tax sale scheme, the Debtor can no longer avoid the issuance of a tax deed. In effect, Hecimovich has a right to the Debtor's Real Estate, contingent only on Hecimovich complying with the necessary procedures to obtain tax deed pursuant to the Indiana Tax Sale scheme. Accordingly, Hecimovich does not hold a secured claim that can be treated by the Debtor's Chapter 13 Plan pursuant to §1322(b)(2). As a consequence, the Motion for Stay Relief and Abandonment and the Objection to Confirmation by Hecimovich must be sustained. It is therefore,

        **ORDERED, AJUDGED, and DECREED**, that the Motion for Stay Relief and Abandonment by Brian Hecimovich, should be and is hereby **SUSTAINED**. The §362 automatic stay as to the Debtor's real

estate is hereby terminated pursuant to §362(d)(1) for cause, and the Real Estate is hereby abandoned from the

Debtor's estate pursuant to §554(b). And it is further,

**ORDERED, ADJUDGED, and DECREED**, that the Objection to Confirmation by Brian

Hecimovich, should be and is hereby sustained, and the Debtor shall file an Amended Plan within 28 days of

the entry of this Order that is consistent with this Order.

The Clerk shall enter this Order on a separate document.

Dated: September 22, 2020

JUDGE, U. S. BANKRUPTCY COURT

Distribution:
Debtor
Attorney for Debtor
Attorney for Hecimovich
Trustee
U. S. Trustee

7

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

IN RE:
ERIC C. WEATHERSBY                          )
KATHRYN J. WEATHERSBY                        )
                                             )         CASE NO. 12-23347
                              Debtors        )
                                             )

MEMORANDUM OPINION, DECISION, AND ORDER
ON MOTION BY CPT REO L.L.C.
For RELIEF FROM STAY AND ABANDONMENT
OF PROPERTY

I

Statement of Proceedings

This Chapter 13 Case is before the Court on the Amended Motion for Relief from Stay and

Abandonment of Property by CPT REO, LLC, as Assignee of Tax Sale Purchaser Clark Property Tax

Investments LLC filed on November 27, 2012.   ("Creditor").

The Amended Motion states in relevant part as follows:

1.  On September 4, 2012 the above named Debtors filed a voluntary petition pursuant
to Chapter 13 of the Bankruptcy Code.

2.  Creditor is the holder of a secured claim with the principal outstanding balance of
$150,000.00.  Said Claim is secured by the tax sale certificate to the real property located
at 9204 Wright Street, Merrillville, Indiana 46410.

3.  A lien to the above described property was sold at tax sale September 28, 2011 by
the Lake County Auditor with the sum paid by the Creditor of $150,000.00.

* * * *

5.  If tax sale redemption period were to be enlarged beyond the additional 60 days
granted by 11 U.S.C. §108(b) and In re Tynan, 773 F.2d 177 (7th cir. 1985) the statutory
interest would continue at a rate of $38.13 per day, (15% per annum).

6.  That pursuant to Indiana Code 6-1.1-25-4.6 Petition to court for issuance of tax
deed....; after, but not later than six (6) months after, the expiration of the redemption

1                                        APPENDIX A

period the purchaser at tax sale (the Creditor herein) may petition the court for issuance of a tax deed vesting title to the property in the Creditor.

7. That pursuant to Indian Code 6-1.1-25-7 <u>Termination of Purchaser's lien....</u> if the purchaser at tax sale (the Creditor herein) fails to file a petition to issue tax deed not later than six (6) months after the expiration of the redemption period, (March 27, 2013) the lien expires.

8. The Debtor failed to make the tax sale redemption payment.

9. The Debtor has failed to address Creditors secured interest in the bankruptcy plan.

10. The Debtor has failed to, and will be unable to, adequately protect Creditor's secured interest.

11. The failure to adequately protect Creditor's secured interest in the property is sufficient cause for the Court to grant relief from the stay and abandonment of the property to the Creditor within the meaning of Section 362 of the Bankruptcy Code.

The Property in issue that is the subject of the Creditor's Motion is the Debtors' Real Estate commonly known as 9204 Wright, Merrillville, Indiana 46410 ("the Property). The Motion asserts that the Creditor holds a "secured" Claim "secured" by a Tax Sale Certificate, and that the balance secured by the Certificate is $150.000.00.

The Debtors filed their Objection to the Motion of the Creditor on December 10, 2012, asserting that the Property is the Debtors' home and primary residence.; that the Creditor's "Secured" Claim is  fully and adequately protected; that the Debtors' proposed Plan provides for the payment of Creditor's "Secured" Claim; and, that the Property is necessary for the Debtors well-being and Rehabilitation.[1]

---

[1]
The Plan of the Debtors filed on October 23, 2012 provides, in part, at Paragraph 1.C. Class Three, "Prepetition Arrearage on Continuing Claims 11 U.S.C §1322(b)(5), "that the Creditor as to the Property is listed as the Lake County Treasurer, with a Redemption Amount as of September 4, 2012 being in the "arrears amount" of $36,279.45.

In addition, Paragraph 1.D.(3) of the Plan "Secured" Debts, which will not extend beyond the length of the Plan, also treats the Lake County Treasurer/Auditor as a Secured Creditor in the amount

2                                      APPENDIX A

A Prehearing Conference was held on December 11, 2012 on the Creditor's Motion.

The Court directed that FRBP 8 apply per FRBP 9014(c) and Ordered the Debtor to file an answer to the Creditor's Motion, including any affirmative defense, and that the Creditor file its reply thereto.

The Debtors filed their Response to the Creditor's Motion on December 21, 2012.

The Creditor filed its Reply to the Debtors' Response on January 9, 2013.

A Status Conference was held as to this Contested Matter on January 22, 2012.

At that Status Conference, the Creditor and the Debtors orally stipulated that there remained

---

of $36,279.45 as of September 4, 2012, whereby the Debtors propose to pay $1700.00 a month based on an interest rate of 15% per annum.

The Creditor also filed its Objection to the Debtors' Plan on November 16, 2012. The Objection of the Creditor alleges that the Debtors' Plan does not provide for the Creditor as a Secured Creditor or to surrender the Property. The Objection further asserts that pursuant to §108(b) the Trustee (herein the Debtors) had an additional 60 days from the Petition date of September 4, 2012 to redeem the Property from the Tax Sale, i.e. until November 5, 2012, and that after that date the Debtors' Right to Redeem was lost, citing, In re Tynan, 773 F.2d 177 (7th Cir. 1985).

Pursuant to Fed. R. Evid. 201, as made applicable by Fed. R. Bk. P. 9017, the bankruptcy court is duty bound to take judicial notice of its records and files. In re Snider Farms, Inc., 83 B.R. 977, 986 (Bankr. N.D. Ind. 1988).

The Court takes judicial notice of the Debtors' Schedule A-Real Property, in which the Debtors schedule the Property in question. Schedule A does not identify the nature of the Debtors' interest in the Property.

The Court takes further judicial notice of the Debtors' Schedule B-Personal Property, in which the Debtors did not schedule any Right by the Debtors to Redeem the Tax Sale Certificate held by the Creditor.

The Court also takes judicial notice of the Debtors' Schedule D - Creditors Holding Secured Claims, in which the Lake County Treasurer is listed as a Secured Creditor as to the Property in the sum of $36,279.45. The Creditor is not listed in Schedule D. However, Schedule D does list Clark Property Tax Investments LLC, who is the Assignor of the Tax Sale Certificate to the Creditor, as "Creditor of Delinquent Property Tax Sale" with a Claim value of $1.00; and the Auditor of Lake County as a Creditor pursuant to "2011 Property Tax Sale Record."

3                                                    APPENDIX A

no Genuine Issues of Material Fact, that the Issues are Issues of law only, and that this Contested Matter was submitted to the Court as an agreed case without an evidentiary hearing.

II

The Stipulated Facts

The relevant and operative stipulated material facts relating to this Contested Matter as to which there is no genuine dispute are as follows:

1.  On September 4, 2012 the Debtors filed a voluntary petition pursuant to Chapter 13 of the Bankruptcy Code.

2.  A Tax Sale Certificate to the Property was sold to the Creditor at tax sale held on September 28, 2011 by the lake County Auditor with the sum paid by Creditor of $150,000.00 including:

    Minimum Bid of:  $ 15,324.91
    Surplus of:        $134,675.09

3.  The Creditor is the holder of a Claim with the principal outstanding balance of $150,000.00. Said Claim is secured by the tax sale certificate to the Property located at 9204 Wright Street, Merrillville, Indiana 46410 ("the Property") and more particularly described as:

    Key Number/Property ID#:      45-12-30-378-015.000-030
    Brief legal Description:       Bridgewood Unit One Lot 60

4.  The outstanding redemption balance due on the tax sale certificate at the time of the bankruptcy filing was: $38,649.92 including:

    Accrued interest and reimbursable costs of:  $23,325.01
    Minimum bid of:                               $15,324.91

5.  Upon the sale of the Tax Sale Certificate for delinquent taxes, the Debtors had a one year statutory (September 27, 2011 - 2012) right to redeem the Tax Sale Certificate as provided by I.C. 6-1.1-25-4(a)(1).

6.  Pursuant to U.S.C. §108(b), upon the filing of a Petition for bankruptcy, the Debtors received an additional 60 day statutory right to redeem the Tax Sale Certificate delinquent as to the Property calculated from the date the Petition was filed. (September 4, 2012 - November 4, 2012.)

7.  The redemption amount has not been paid by the Debtors.

4                                    APPENDIX A

8. During the one year redemption period, the tax sale purchaser, the Creditor, had the responsibility to and did provide notice or the Tax Sale to the Debtors as record Owners pursuant to I.C. 6-1.1-25-4.5 and I.C. 26-1.1-2.5-4.6(d). See In re 2007 Tax Sale in Lake County, 926 N.E2d 524, 528-529 (Ind. App. 2010).

9. In order to receive Tax Deed to the Property, upon the expiration of the redemption period, the tax sale purchaser, the Creditor, must petition the Court for Tax Deed, as required under I.C. 6-1.1-25-4.6 and the Court after having reviewed the propriety of the sale, would grant an order to issue the Tax Deed.  (I.C. 6-1.1-25-4.6).

III

The Position of the Parties
A.
The Position of the Debtors

The Debtors in their Response filed on December 21, 2012 ask the Court to apply the conclusion of the Court in the Chapter 13 case of Salta Group, Inc. V. McKinney, 380 B.R. 515 (C.D. Ill 2008).  In McKinney, the tax purchaser objected to confirmation of the debtor-taxpayers' plan as improperly providing for redemption of the their principal residence in installments.  The McKinney Court held that under Illinois Law the purchaser at the prepetition tax sale of the debtor's principal residence did not have a security interest as defined by §101(51), but had statutory lien, were not the owners of the real estate, and thus the debtor was not prohibited from modifying the rights of the tax sale purchaser pursuant to the anti-modification provisions of §1322(b)(2).  Id. 380 B.R. at 519. n2.

The McKinney Court next addressed the application of §§108(b) 362, and 1322 to the statutory period for the debtors to redeem the tax sale certificate.  The McKinney Court endorsed the reasoning of the Court in the Case of In re Bates, 270 B.R. 270 B.R. 455 (Bankr. N.D. Ill. 2001), which held that §108(b) only limited the extension of a nonbankruptcy right, and that nothing in §108(b) transforms the extension of a nonbankruptcy right into a negation of bankruptcy rights specifically accorded elsewhere in the Code.  Relying also on Moody v. Amoco Oil Co., 734 F.2d 1200, 1214-1215 (7th Cir. 1984) where it held that §108(b) could not limit the right to cure executory contracts accorded by §365.  Id. 380 B.R.

at 522.  Thus, the <u>McKinney</u> Court decided that §108(b) does not act as a bar cutting off a debtors rights

under §1322 to pay off a tax buyer over the term of the Chapter 13 plan.  <u>Id</u>. 380 B.R. at 525.

B.

<u>The Position of the Creditor</u>

The Creditor in its Reply on January 9, 2013, to the Debtors' Response relies on <u>In re Tynan</u>,

773 F.2d 177 (7th Cir. 1985); <u>In re Rugroden</u>, 481 B.R. 69 (Bankr. N.D. Cal. 2012); <u>In the Matter of</u>

<u>2002 Lake County Tax Sale of Real Property with Delinquent Taxes or Special Assessments Tax I.D.</u>

<u>#16-27-0122-0026</u>, 818 N.E.2d 565 (Ind. App. 2004), and I.C. 24-1-1-25-4, which provides that the

period for the redemption of real estate sold under I.C. 6-1.1-24 is one year.  The Creditor in relaince

on the above authorities asserts that the Debtors' statutory redemption period has expired on November

4, 2012, and that the Debtor did not redeem the tax sale certificate by November 4, 2012, or within 60

days of the Petition date a provided by §108(b).  Accordingly, based on the foregoing, the Creditor

asserts it has shown cause to grant its Amended Motion for Stay Relief.

IV N

<u>General Principles as to</u><br><u>Property of the Bankruptcy</u><br><u>Estate of the Chapter 13 Debtors</u><br><u>and the Claim of the Creditor</u>

Section 541(a) of title 11 provides as follows:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate.  Such estate is comprised of all the following property, wherever located and by whomever held:
>
> > (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

The question of whether a debtor's interest in property is "property of the estate" is a federal

6                              APPENDIX A

question to be decided by federal law. Fisher v. Apostolou, 155 F.3d 876, 880 (7th Cir. 1998); In re Marrs-Winn Co., Inc., 103 F.3d 584, 591 (7th Cir. 1996); Koch Refining v. Farmers' Union Cent. Exchange, Inc., 831 F.2d 1339, 1343 (7th Cir. 1987).

The determination of what property rights the debtor has on the petition date is created and defined by state law, unless some federal interest requires a different result. Marrs-Winn, 103 F.3d at 591 (citing, Butner v. United States, 440 U.S. 48, 54, 99 S. Ct. 914, 918, 49 L. Ed. 2d 136 (1979)); Fisher, 155 F.3d 880 (citing, In re A-1 Paving and Construction, Inc., 116 F.3d 242, 243 (7th Cir. 1997)); Barnhill v. Johnson, 503, U.S. 393, 397-98, 112 S. Ct. 1386, 1389, 118 L. Ed. 2d 39 (1992)); UNR Indus. Inc. v. Continental Casualty Co., 942 F.2d 1101, 1103 (7th Cir. 1991), cert. den. – U.S. –, 112 S. Ct. 1586, 118 L. Ed. 2d 305 (1992); In re Atchison, 925 F.2d 209, 210-211 (7th Cir. 1991); Koch Refinery v. Farmer's Union Cent. Exchange, 831 F.2d 1339, 1343 (7th Cir. 1987); In re Sandy Ridge Oil Co., Inc., 807 F2d 1332, 1335 (7th Cir. 1986) (citing In re Brass Kettle Restaurant, Inc., 790 F2d 574, 575 (7th Cir. 1986); In re K & L Limited, 741 F2d 1023, 1030 + n.7 (7th Cir. 1984); and, Matter of Gladstone Glen, 628 F2d 1015, 1018 (7th Cir. 1980)); Matter of Jones, 768 F.2d 923, 927 (7th Cir. 1985). As a general matter, Congress in enacting the Bankruptcy Code intended a broad range of property to be included in the debtor's estate pursuant to 11 U.S.C. §541. United States v. Whiting Pools, Inc., 62 U.S. 198, 103 S. Ct. 2309, 2313, 76 L. Ed. 2d 515 (1983).

The scope of "property" under §541 is necessarily limited to the property owned by the debtor at the commencement of the case. Matter of Carousel International Corporation, 89 F.3d 359, 361 (7th Cir. 1996) (citing, Matter of Wayco, Inc., 947 F.2d 1330, 1333 (7th Cir. 1991)); Matter of Lyons, 957 F.2d 444, 445 (7th Cir. 1992) (The trustee's claim to estate property is no greater than the debtor's claim at the time of the filing)".

Section 541(a)(1) of the Code changed the legal landscape by dramatically expanding the

7                                APPENDIX A

definition of property included in the estate.  Matter of Geise, 992 F.2d 651, 655 (7th Cir. 1993).  Section 541 eliminated the requirement that property must be transferable or subject to process in order to become initially part of the estate.  Id.  See also  In re Polis, 217 F3d 899, 902 (7th Cir. 2000) (debtors' legal claims are assets of bankruptcy estate whether or not they are assignable, especially when they are claims for money).  Every conceivable interest of debtor, future, non-possessory, contingent, speculative, and derivative is within the reach of §541.  The Matter of Yonikus, (Yonikus II), 996 F.2d 866, 869 (7th Cir. 1993).

However, the estate's rights are limited to those had by the debtor, i.e., "whatsoever rights a debtor had at the commencement of the case continue in bankruptcy - no more, no less."  Matter of Jones, 768 F.2d at 927, supra, (quoting, Moody v. Amoco Oil, Inc., 734 F.2d 1200, 1213 (7th Cir. 1984)).  Thus, the filing of a bankruptcy petition does not expand or change a debtor's interest in an asset; it merely changes the party who holds that interest.  Matter of Sanders, 969 F.2d 591, 593 (7th Cir. 1992).  A trustee takes property subject to the same restrictions that existed at the commencement of the case, and to the extent an interest is limited in the hands of a debtor, it is equally limited as property of the estate.  Id.

In order to file a claim cognizable in bankruptcy, a creditor must possess a debt based on state or federal law creating a substantive obligation independent of bankruptcy law.  In Matter of Chicago, Milwaukee, St. Paul and Pacific Ry. Co., 878 F.2d 182, 184 (7th Cir. 1989), (Citing, Vanston Committee v. Green, 329 U.S. 156. 170, 67 S. Ct. 237, 243, 91 L.Ed. 162 (1946) (Frankfurter, J. , concurring)).

The validity of a creditor's claim is determined by rules of State law, which as expansively used, includes all nonbankruptcy law that creates substantive claims.  Grogan v. Garner, 489 U.S. 279, 111 S. Ct. 654, 657 & N.9, 112 L.Ed 2d 754 (1991) (citing, Vanston Bondholders Protective Comm. V. Green, 329 U.S. 156, 161, 67 S. Ct. 237, 239, 91 L.Ed. 162 (1946)); Raleigh v. Illinois Department of

Revenue, 530 U.S. 15, 120 S. Ct. 1951, 1955, 147 L.Ed2d 13 (2000) (creditor's entitlements in bankruptcy arise in the first instance from the underlying law creating the debtor's obligations subject to any qualifying or contrary provisions of the bankruptcy code. The "basic federal rule" in bankruptcy is that State Law governs the substance of claims) (citing, Butner v. United States; 99 S. Ct. 914 (1979) and Vanston Bondholders Protective Committee v. Green, 67 S. Ct. 237.)); Traveler's Casualty & Surety Co of America v. Pacific Gas & Electric Co., 549 U.S. 443, 127 S. Ct. 1199, 1205, 167 L.Ed.2d 178 (2007) ([ W]hen the Bankruptcy Code uses the word "claim" - which the Code itself defines as a "right to payment," 11 U.S.C. §1021(5)(A) - it is usually referring to a right to payment recognized under State Law").

Accordingly, based on the above applicable law it is clear that the property rights of the Debtors relating to their statutory right to redeem the Tax Sale Certificate and the validity of the Creditor's Claim versus the Debtors' Estate based upon the Tax Sale Certificate issued to it are to be determined by applicable State Law, i.e. the Law of the State of Indiana. The Creditor, as a holder of the Tax Sale Certificate, is the holder of a "claim" versus the Debtors' estate as defined by §101(5), even though the Debtors have no in personam liability to the Creditor and the Creditor may only hold an in rem claim versus the Property of the Debtors' estate. See, Johnson v. Home State Bank, 501 U.S. 78, 111 S. Ct. 2150, 2154 115 L.Ed. 2d 66 (1991) (a mortgage's interest that survives the discharge of a debtor's in personam liability is a "claim" pursuant to §101(5)) as a discharge leaves intact the in rem claim.)  In Indiana it is provided that a person who is liable for property taxes under I.C. 6-1.1-2-4 is personally liable for the taxes. See, I.C. 6-1.1-22-10.  However, the Debtors' In personam liability for unpaid real estate taxes is to Lake County, and not to the Creditor as purchaser of the Tax Sale Certificate, who holds only an in rem statutory lien on the Debtors' property.  Nevertheless, based on the Supreme Court's Opinion in Johnson v. Home State Bank, the Creditor holds a "claim" versus the Debtors' estate

9                                    APPENDIX A

pursuant to §101(5).

The Bankruptcy Code recognizes, by definition, three expressly separate and distinct types of liens. The term "Lien" means a charge against or interest in property to secure payment of a debt or performance of any obligation(11 U.S.C. §101(37). These three types of liens are security agreements or security interests (11 U.S.C. §101(50) and (51), Judicial Liens (11 U.S.C. §101(36), and Statutory Liens (11 U.S.C. §101(53). The Bankruptcy Code does not separately define the term "secured claims" but is addressed in §506(a)(1) which states that, "An allowed claim of a creditor secured by a lien on property of the debtor in which the estate has an interest...is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property."

A Statutory Lien is defined at §101(53) as follows:

(53) The term "statutory lien" means lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does <u>not include security interest or judicial lien</u>, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute. (emphasis supplied).

The legislative history to §101(53) clearly indicates that a tax lien is a Statutory Lien. The House and Senate reports to the Bankruptcy Reform Act of 1978 state as follow:

Paragraph (38) [now redesignated as (53)] defines another kind of lien, "statutory lien." The definition, derived from current law, states that a statutory lien is a lien arising solely by force of statute on specified circumstances or conditions, and includes a lien of distress for rent (whether statutory, common law, or otherwise). The definition excludes judicial liens and security interests, whether or not they are provided for or are dependent on a statute, and whether or not they are made fully effective by statute. A statutory lien is only one that arises automatically, and is not based on an agreement to give a lien or on judicial action. Mechanics', materialmen's, and warehousemen's liens are examples. <u>Tax liens are also included in the definition of statutory lien.</u> (emphasis supplied).

HR Rep No. 595, 95th Congress 1st Sess 314 (1977); S. Rep. No 989, 95th Cong., 2d Sess 27 (1978).

<u>Reprinted</u> in Norton Bankruptcy Code, 2012-2013 Edition. P. 91 (West). (Emphasis added). <u>See</u>, <u>In re J. B. Winchell's Inc.</u>, 106 B.R. 384, 390 (Bankr. E.D. Pa. 1989) (any lien for government taxes is

10                                    APPENDIX A

considered by the Bankruptcy Code to constitute a statutory lien including tax liens)

It is clear that when the Tax Sale Certificate was delivered to the Creditor's assignor as a Tax Sale Purchaser, the purchaser acquired a statutory lien against the Debtors' property for the entire amount paid pursuant to I.C. 6-1.1-24-9(b). It has been expressly held that the tax sale certificate issued to the purchaser at a sale of real estate for delinquent taxes does not convey to the purchaser title to title to the land, but merely creates a lien in the purchaser for the amount of the taxes paid. Smith v. Breeding, 586 N.E.2d 932, 937 (Ind. App. 1ˢᵗ Dist. 1992) (citing, I.C. 6-1.1-24-9(b),) and Geller v. Meek, 496 N.E. 2d 103, 106 (Ind. App. 1986)). When the period of redemption expires, the purchaser acquires title to the land by tendering the tax sale certificate in exchange for the tax deed. Id., 586 N.E.2d at 937-938 (citing, I.C. 26-1.1-25-4), and Calhoun v. Jennings, 512 N.E.2d 178, 181 (Ind. 1987)).

Pursuant to I.C. 6-1.1-25-1, any person as to a Certificate of Sale sold at a tax sale may redeem the property at any time before the expiration of the one year period of redemption as provided by I.C. 6-1.1-25.4(a(1).

Pursuant to I.C. 6-1.1-25-4.6(g), a tax deed vests in the grantee an estate in fee simple absolute, free and clear of all liens and encumbrances created and suffered before or after the tax sale, except those liens granted priority by federal law and the lien of the state, or a political subdivision for taxes and special assessments, which accrue subsequent to the sale, that are not removed under subsection (c).

IV

Discussion

The automatic stay pursuant to §362 does not affect the relevant redemption periods which have been established pursuant to state statutes. Section 362 does not toll the running of a statutory redemption period. See, Matter of Tynan, 773 F.2d 177, 179-80 (7ᵗʰ Cir. 1985); see also, In re Roach,

11                                   APPENDIX A

824 F.2d 1370, 1372 n.1 (3rd Cir. 1983) cert.denied, _____ U.S. ____, 104 S. Ct. 1015, 79 L.Ed.2d 245 (1984); (§108(b) simply extends the state law time period within which the debtor may exercise a state law right of redemption; §108(b) has no bearing on the scope of the authorization to cure default found in §1322(b)); Johnson v. First National Bank of Montevideo, Minnesota, 719 F.2d 270, 277-278 (8th Cir. 1983) cert. den. _____ U.S. _____ 104 S. Ct. 1015, 79 L.Ed2d 245 (1984) (§108(b) is the only extension of time available to debtors); Tabor Enterprises, Inc., v. Illinois, 65 B.R. 42, 46 (N.D. Ohio 1986) (expiration of redemption period not act protected by §362). In re Peterson, 42 B.R. 39, 41-42 (Bankr. D. Or. 1984) (running of statutory redemption period is not an "act" or "proceeding" within the meaning of 11 U.S.C. §362).

Section 108(b), which provides the only means of tolling a statutory redemption period, states as follows:

> (b)  Except as provided in subsection (a) of this section, if applicable nonbankrutpcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of - -

> > (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

> > (2) 60 days after the order for relief.  (emphasis supplied).

As noted by the above emphasis to the text of §108(b), this section applies to the statutory redemption rights created by non-bankruptcy law law. In re Martinson, 731 F.2d 543, 544, (8th Cir. 1984). Nothing in §108(b) authorizes the Court to extend the redemption period beyond that provided by that provision. Id. 731 F.2d at 544-545. The Seventh Circuit Court of Appeals in Matter of Tynan, 773 F.2d 177, held that where a petition in Bankruptcy is filed before the expiration of the applicable statutory redemption period, 11 U.S.C. §108(b), which grants a debtor the right to cure a default or

12                                   APPENDIX A

perform for 60 days after the order for relief, extends the redemption period for 60 days from the commencement of the proceedings. In Tynan, one day remained on the mortgagor's statutory redemption period at the time the mortgagors commenced their chapter 13 bankruptcy proceeding. The court found that upon the filing of the bankruptcy petition, the mortgagors' Illinois statutory right of redemption was extended for 60 days after the order of relief under §108(b), which provides that the debtor may cure a default or perform an obligation for 60 days after the order for relief. Id., 773 F.2d at 179. The Tynan court observed that when a Chapter 13 Petition is filed the statutory right of redemption was an asset of the estate and that any further extension of the redemption period would constitute an impermissible creation of a property right. Id., 773 F.2d at 179-180. The Tynan court cited In re Martinson, 731 F.2d 548 (8th Cir. 1984) and, Johnson v. First National Bank of Montevideo Minnesota, 719 F.2d 270, 278 (8th Cir. 1983) cert. denied, ____ U.S. ___, 104 S. Ct. 1015, 79 L.Ed.2d 245 (1984) with approval, and held that where a petition is filed before the expiration of the appealable state redemption period that the automatic stay does not toll the running of a redemption period, and §108(b) is the only extension of time available.

In the prior case of Moody v. Amoco Oil Co., 734 F.2d 1200 (7th Cir. 1984), the Seventh Circuit held that §108(b) did not apply to curing defaults in executory contracts and that §365 governed the time for curing defaults in executory contracts. Id. 734 F.2d at 1215-1216. It is noted that at Footnote 15, the Moody Court distinguished the case of Johnson v. First National Bank of Montevideo, 719 F.2d 270 (8th Cir. 1983), where the Court held that §108(b) rather than §362 controlled the time of expiration of a statutory period of redemption of a mortgage. The Moody Court further observed that §362 does not expressly provide a time limit for statutory periods of redemption, and thus there is no express conflict between §362 and §108(b), while §365 expressly provides a time limit for the cure of defaults under executory contracts, and thus the Court should not apply §108(b) so as to cause an inexplicable

conflict between the two sections.  The <u>Moody</u> Court further stated that it expressed no opinion as to whether the <u>Johnson</u> decision was correct.

Another circuit court to consider the applicability of the 60 day period as set out in §108(b) has also held that the debtors redemptive rights are limited to the provisions of §108(b).  <u>See,</u>  <u>In re Glenn,</u> 760 F.2d 1428, 1436-40 (6th Cir. 1985), holding that the §362 automatic stay does not operate to toll the running of the statutory period for redeeming real estate sold at a foreclosure sale. The Bankruptcy Court in <u>In re Farmer,</u> 81 B.R. 857, 858-62 (Bankr. E.D. Pa. 1988) held that the automatic stay did not suspend the running of a statutory redemption period for redeeming property at a tax sale, and that the debtors' redemptive rights were controlled by §108(b). (collecting cases).

Pursuant to <u>Matter of Tynan,</u> 773 F.2d at 179, §108(b) does not create any substantive property rights in the Debtors' bankruptcy estate that the Debtors did not have on the Petition date.  Nor can §105(a) be employed by the Court to increase the property rights of the Debtors' estate.  As stated by the Court in <u>Johnson v. First National Bank of Montevideo, Minnesota,</u> 719 F.2d 270 (8th Cir. 1983):

> The Supreme Court did of course recognize, in <u>Butner</u> [<u>Butner v. United States,</u> 440 U.S. 48, 99 S. Ct. 914, 59 L.Ed.2d 136 (1979)] that "[t]he equity powers of the bankruptcy court play an important part in the administration of bankrupt estates in countless situations in which the Judge is require to deal with particular, individualized problems." 440 U.S. at 55-6 99 S.Ct. At 918.  From the fundamental principles embraced by the <u>Butner</u> opinion, however, as well as from the language of §105(a) itself, it follows that, absent a specific grant of authority from Congress or exceptional circumstances, a bankruptcy court may not exercise its equitable powers to create substantive rights which do not exist under state law.  <u>See,</u> <u>In re Perry,</u> 25 B.R. 817, 821 (Bkrtcy. D. Md. 1982); <u>In re Dunckle Associates, Inc.,</u> 19 B.R. 481, 485 (Bkrtcy. E.D. Penn. 1982); and <u>Cf.,</u> <u>in re Trigg,</u> 630 F.2d 1370, 1375 (10th Cir. 1980).  To conclude otherwise, and thus to hold that a bankruptcy court may, as a matter of course, suspend the running of a statutory period of redemption pursuant to §105(a), we therefore find ourselves in agreement with those courts which have held that §105(a) may not be invoked to toll or suspend the running of a statutory period of redemption absent fraud, mistake, accident, or erroneous conduct on the part of the foreclosing officer.  <u>In re Martinson,</u> 26 B.R. 648, 654 (D.C.N.D. 1983); <u>Matter of Markee,</u> 31 B.R. 429, 432 (Bkrtcy. D. Idaho 1983);<u>In re James,</u> 20 B.R. 145, 150-1 (Bkrtcy. E.D. Mich. 1982); <u>In re Headley,</u> 13 B.R. 295, 297-98 (Bkrtcy. D. Colo. 1981); <u>but cf.,</u> <u>Bankr. of Commonwealth v. Bevan,</u> 13 B.R. 989 (D.C.E.D) Mich. 1981); <u>Bankr. Of Ravenswood</u>

14                                    APPENDIX A

_v. Patzold_, 27 B.R. 542 (D.C.N.D. Ill. 1982).

_Id._, 719 F.2d at 273.  _Accord._  _In re Glenn_, 760 F.2d 1440-41 (6th Cir. 1985); _In re Farmer_, 81 B.R. 857,

862 (Bankr. E.D. Pa. 1988).

The Opinion of the Court of Appeals of Indiana in the case of _In the Matter of the 2002 Lake_

_County Tax Sale of Real Property with Delinquent Taxes or Special Assessments Tax I.D. #16-27-0122-_

_0026_, 818 N.E2d 505, (Ind. App. 2004) ("_2002 Lake County Tax Sale Opinion_") is directly applicable

to this Contested Matter.  In this case, the Assignee of the Purchaser of a Tax Sale Certificate, petitioned

the Trial Court for the issuance of a Tax Deed.  One of the owners of the subject Real Estate orally

objected and requested an additional five days to redeem the subject Real Estate.  The Trial Court

granted this request, and subsequently the Trial Court issued an Order denying the Petition of the holder

of the Tax Sale Certificate.  The holder of the Tax Sale Certificate appealed the Order of the Trial Court.

In reversing the Trial Court, the Court of Appeals of Indiana stated as follows:

> In this case, the trial court's judgment turns on the interpretation of Indiana Code
> §§6-1.1-25-1, 6-1.1-25-4, and 6-1.1-25-4.6.  The interpretation of a statute is a question
> of law reserved for the courts.  _State v Rans_, 739 N.E.2d 164, 166 (Ind. Ct. App. 2000).

* * * *

> Our supreme court succinctly set forth the framework for the issuance of tax deeds
> in _Tax Certificates Invs., Inc., v. Smethers_, 714 N.E.2d 131, 133 (ind. 1999).  The
> supreme court stated that, in part, a purchaser of Indiana real property that is sold for
> delinquent taxes initially receives a certificate of sale.  _Id; see_ Ind. Code §6-1.1-24-9.
> Thereafter a one-year redemption period ensues.  _Tax Certificates Invs., Inc._, 714
> N.E.2d at 133; _see_ I.C. §§6-1.1-25-1; 6-1.1-25-4.  Previously, the statute provided that
> an interested person could redeem the tract at any time before the date when the auditor
> was required to issue a tax deed; thus, a redemption could occur after the one-year
> redemption period expired if the trial court had not yet entered the order for a tax deed.
> _In re the 2002 Floyd County Tax Sale_, 813 N.E.2d 805, 809 (Ind Ct. App. 2004); _see_
> _also Wildwood Acres Trust v First Citizens State Bank_, 671 N.E.2d 1199, 1202 (Ind. Ct.
> App. 1996).  However, effective July 1, 2001, Indiana Code §6-1.1-25-1 was amended
> to provide for a definitive period of redemption, dependent upon the expiration of the
> statutory period rather than upon the time it takes a court to order a tax deed.  _In re the_
> _2002 Floyd County Tax Sale_, 813 N.E.2d at 809.  Specifically, Indiana Code §6-1.1-25-
> 4(a) provides in relevant part: "[t]he period for redemption of real property sold under

15                                          APPENDIX A

Indiana Code §6-1.1-24 is one (1) year after the date of sale"" Id. Thus, the redemption statutes, i.e. Indiana Code §§6-1.1-25-1 and 6-1.1-25-4, construed together, clearly contemplate a fixed on-year redemption period. Therefore, if the owners fail to redeem the property during that year, a purchaser who has complied with the statutory requirements is entitled to a tax deed. Tax Certificate Invs., Inc., 714 N.E.2d at 133; see also I.C. §6-1.1-25-4.6.

* * * *

Here, the record reveals that the trial court neglected to apply the unambiguous language of the statutes in determining whether to grant or deny the Appellant's Petition. In particular, Indiana Code §6-1.1-25-4.6(b) clearly mandates the trial court to enter an order issuing a tax deed within sixty-one days of the filing of the Petition if the petitioner has met all necessary conditions. The statute is silent in allowing the trial court to exercise its discretion in granting additional time before ordering the issuance of a tax deed. In the instant case, the trial court did just that: after granting the Appellants' Petition, the trial court nevertheless allowed the Frazees extra time to redeem the property by awarding them an additional 98 days beyond the on-year limitation for redemption of property.

Consequently, based on the clear and unambiguous language of Indiana Code §§6-1.1-25-1; 6-1.1-25-4; and 6-1.1-25-4.6, we conclude that the trial court does not have the discretion to extend the period of redemption beyond the one-year limitation. See Montgomery, 677 N.E.2d at 574. Therefore, we find that the trial court erred in denying Appellant's Petition.

Id. 818 N.E.2d at 507-509. (emphasis supplied).

Accordingly, based on the Opinion of the Indiana Court of Appeal in the 2002 Lake Cunty Sale Opinion, it is clear that under Indiana Law, an Indiana Court has no discretion whatsoever to extend the statutory one year period to redeem a Tax Sale Certificate pursuant to I.C. 26-1.1-25-4(a). It is important to note that, as observed by the Indiana Court of Appeals, I.C. 26-1.1-25-1 was amended in 2002, to provide for a definite period of redemption, while the prior version provided that an interested party could redeem at any time before the auditor was required to issue a tax deed, and thus the Debtors no longer have the right to redeem the Tax Sale Certificate over one year after the issuance of the Tax Sale Certificate. Id. 818 N.E.2d at 508. Indiana Code 26-1.1-25-1, as presently constituted, now expressly provides that the record owner of the subject real estate must redeem within one year of the issuance of the tax sale certificate pursuant to I.C. 6-1.1-25-4(a) by paying the County Treasurer the

16                          APPENDIX A

amount required for redemption.

The Debtors' §541 property right to redeem the Tax Sale Certificate postpetition is likewise so limited, for as observed above, the Debtors' bankruptcy estate property rights are limited to those held by the Debtors at the commencement of the case "no more, no less". Moody v. Amoco Oil, 734 F.2d at 1213. The filing of a bankruptcy petition does not expand or change a debtor's interest in an asset, it merely changes the party that holds that interest. Matter of Sanders, 969 F.2d at 593.

In that the Chapter 13 Debtors' prepetition property right, i.e. their prepetition property right to redeem the Tax Sale Certificate is limited to one year, their right to redeem is also so limited postpetition to one year pursuant to I.C. 26-1.1-25-4(a). Thus, the Debtors' one year redemption date can only be extended postpetition pursuant to §108(b). It is correct that between the time the one-year statutory time to redeem the prepetition tax sale certificate has run postpetition, and the issuance of a postpetition tax deed to the tax sale certificate purchaser, the tax sale purchaser still only holds a statutory lien in the Debtors' property as of the Petition date until a tax deed is issued, which would occur postpetition, nevertheless the Debtors' statutory right to redeem has been irrevocably and completely lost. There are no provisions whatsoever in the Indiana Tax Code, or based on Indiana Case Law, to extend the statutory one-year period of redemption. See, 2002 Lake County Tax Sale Opinions, 818 N.E.2d at 507-509. Supra. The Court will not, and need not, speculate on a hypothical scenario that for some reason the tax sale certificate or a subsequent tax deed might be subject to being set aside as not being properly issued as required by applicable Indiana Law, and there is no indication in the record that the Tax Sale Certificate was improperly issued. See, e.g. In the Matter of 2007 Tax Sale in Lake County, Indiana. 926 N.E.2d 514 (Ind. App. 2010).

It is clear based upon Matter of Tynan, that the §362 automatic stay does not stay the passage of time, does not toll the running of a redemption period, and that the extension of a redemption period

17                                          APPENDIX A

constitutes an impermissible creation of a property right. 772 F.2d at 179-180. As noted previously, the Seventh Circuit in the prior case of <u>Moody v. Amoco Oil,</u> held that §108(b) could not limit the right to cure executory contracts per §365. <u>Id.</u> 734 F.2d at 1215-1216. The Court in <u>Tynan</u> did not refer to <u>Moody.</u> However, these cases can be reconciled on the facts in that <u>Tynan</u> involved the running of a prepetition state statutory redemption statute, while <u>Moody</u> involved a prepetition executory contract that was governed by §365 and to whether the prepetition default in an executory contract could be cured postpetition.

There are several reported cases on the precise issue presently before this Court, and the Courts are split on how this issue should be resolved as to the tension that some courts have perceived to exist as to the interplay between §108(b) §362(a), 1322(b)(2), and 1325 (a)(5).

The Courts in the cases of <u>In the Matter of Lamont,</u> 2012 WL 6727404 (N.D. Ill); <u>Salta Group v. McKinney,</u> 380 B.R. 515 (C.D. Ill. 2008); and <u>In re Bates,</u> 270 B.R. 455 (Bankr. N.D. Ill. 2001) (in extensive <u>dicta</u>) all held that a debtor who has filed his Chapter 13 petition prior to the expiration of the statutory time to redeem property, that was the subject of a state law tax redemption period, could provide for payment of the purchaser's claim in installments over the life of the plan pursuant to §§1322(b)(2) and 1325(a)(5), notwithstanding the purchaser's contention that §108(b) extended the time for payment to 60 days at the most. <u>See, Id.</u> <u>In Matter of LaMont,</u> 2012 WL 6727404 at * 5-8; <u>Id.</u> <u>Salta Group, Inc. V. McKinney,</u> <u>Id.</u> 380 B.R. at 521-525; and <u>Id.</u> <u>In re Bates,</u> 270 B.R. at 465-467 (<u>dicta</u>).

On the other hand, in the cases of <u>In re Murray,</u> 276 B.R. 869 (Bankr. N.D. Ill 2002); and <u>Smith v. Phoenix Bond and Indemnity,</u> 288 B.R. 793 (E.D. Ill. 2002), the courts rejected the <u>dicta</u> of the Court in <u>In re Bates,</u> 270 B.R. 455, <u>supra</u> and held that while a taxpayer's Chapter 13 petition might extend the time for the debtor to redeem property sold at a tax sale pursuant to §108(b) to the extent that the redemption period had not expired on the petition date, the redemption period was not tolled by virtue

18                              APPENDIX A

of the §362(a) automatic stay, and that the cure provisions of §1322(b)(2) and §1325(a)(5) could not be used by the Chapter 13 debtor-taxpayer, who has failed to redeem property sold at tax sale, in order to cure the tax delinquency and reinstate his rights in the property after the redemption period had expired. See, In re Murray. Id.  276 B.R. at 873-875; Smith v. Phoenix Bond and Indemnity Id. 288 B.R. at 796-797.[2]

The Court in Smith v. Phoenix Bond and Indemnity, found the reasoning of the Court in In re Murray, to be more persuasive than that of the dicta in Bates, and held that imposing §108(b) does not render the provisions of §1322 insignificant, it only limits the time it can be applied while the Bates analysis renders §108(b) superfluous.  Id. 288 B.R. at 797.

The Court in Murray, on which the Court in Phoenix Bond and Indemnity relied, stated as follows:

> The Court declines to follow the view that a secured claim of a tax purchaser may be satisfied in a Chapter 13 case through a plan that provides for full payment of the claim, with interest, in installments over the life of the plan or even longer as contemplated in §1322(d) (up to five years).  The Court respectfully disagrees with the dita in the Bates case [270 B.R. 455] that "§108(B) does not limit the right to modify secured claims specifically accorded by §§1322(b)(2) and 1325(a)."

> \* \* \* \*

> The Court is of the view that Moody is inapposite because it did not involve §1322(b) as in the case at bar, and was decided prior to In re Tynan, 773 F.2d 177 (7th Cir. 1985) which specifically invoked and dealt with §108(b).  Additionally, the Court disagrees with the statement in Bates, that:

> As long as the redemption period has not expired prior to the

---

2

All of the above cases involved an interpretation of the Illinois Property Tax Sale Statutes, while the Case presently before the Court may involve the Indiana Property Tax Sale Statutes. See In re Bates, 270 B.R. at 459-461 and In the Matter of LaMont, 2012 WL 6727404 at * 2-4, which summarize the Illinois Property Tax Sale Statutes. Both the Illinois Statutes and the Indiana Statutes provide for the purchaser at the tax sale to receive a tax certificate which can be redeemed by the property owner within the statutory redemption period.  If there is not redemption the purchaser of the tax sale certificate may petition the state court for a tax deed.  The analysis in the above cases is equally applicable to the Case presently before the Court.

19                                    APPENDIX A

bankruptcy filing, there is a claim that can be treated during the bankruptcy case-through ...plan treatment in Chapter 13-even though the redemption period expires during the pendency of the case.

270 B.R. at 467.

The <u>Bates</u> court concluded that §1322(b)(2) effectively trumps §108(b), with which this Court respectfully disagrees. The Court believes that the interplay of these two Code sections requires that they be read harmoniously. The better and majority view is that the power of modification of secured claims under §1322(b)(2) is effectively limited by and to the extended time period afforded for redemptions under §108(b). Statutes dealing with the same subject matter are to be read in <u>paramateria</u> and harmonized when possible. <u>In re Johnson</u>, 787 F.2d 1179, 1181 (7th Cir. 1986); <u>in re Robison</u>, 665 F.2d 166, 171 (7th Cir. 1981). Chapter 13 should not be read in a manner that would render a provision of the Bankruptcy Code, superfluous or insignificant. <u>See</u> <u>Woodfork v. Marine Cooks & Stewards Union</u>, 642 F.2d 966, 970-71 (5th Cir. 1981). As the Debtor aptly noted, the Court's equitable powers are generally constrained by the limits imposed by the Bankruptcy Code itself which must be applied. <u>See</u>, <u>Norwest Bank Worthington v. Ahlers</u>, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); <u>see also</u> <u>Raleigh v. Illinois Dept. Of Revenue</u>, 530 U.S. 15, 24, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000).

Moreover, the Seventh Circuit Court of Appeals specifically held in <u>In re Tynan</u>, 773 F.2d 177 (7th Cir. 1985) that "when a petition in bankruptcy is filed before the expiration of the applicable state redemption period, §108(b) extends the redemption period for 60 days from the commencement of bankruptcy proceeding." <u>Id</u>. At 179. That clear holding is binding and the latest law of the circuit in regards to the temporal limits of §108(b) regarding redemption periods as extended by that section. <u>Tynan</u> held that a Chapter 13 debtor could not utilize §1322 to redeem real estate from a mortgage foreclosure sale through periodic payments over the life of the plan, but could only redeem the real estate under the time constraints of the Illinois Foreclosure Act, as extended by §108(b). Although the <u>Tynan</u> case dealt with a mortgage foreclosure proceeding, the holding therein regarding §108(b) logically also applies to tax sale proceedings.

\* \* \* \*

If the Court were to allow the Debtor to pay the delinquent real estate taxes over the sixty month life of the amended plan then the Court would be effectively ignoring the express holding in <u>Tynan</u> and rendering §108(b) a nullity by permitting the Debtor to set his own time line for redemption of the Property under §1322(b)(2) and §1322(d). Congress did not include in §108(b) any language further extending redemption rights or specifically providing as a further extension the period set forth in a plan filed under §1322(b).

\* \* \* \*

20                                    APPENDIX A

In addition, the weight of the extant case law supports the conclusion that §108(b) requires a debtor to redeem the taxes within the sixty-day extension period therein. See Jackson 176 B.R. at 159; Bequette, 184 B.R. at 336; Stewart, 190 B.R. at 851; Multnomah County v. Rudolph (In re Rudolph), 166.B.R. 440, 444 (D. Ore. 1994).

Id. 276 B.R. at 875-877.

The Court is in agreement with the Courts analysis in In re Murray and Smith v. Phoenix Bond and Indemnity.  Accordingly the Court finds that inasmuch as the Debtors' one year statutory redemption rights have expired pursuant to I.C. 6-1.1-25-4(a)(1), as extended by §108(b), and the cure provisions of §§1322(b)(2), 1322(b)(5) and §1325(a)(5), are not applicable beyond the 60 day period as set out in §108(b), the Creditor has shown "cause" why its Amended Motion for Stay Relief should be granted.  It is therefore,

**ORDERED, ADJUDGED, AND DECREED,** that the Amended Motion for Stay Relief and Abandonment filed on November 27, 2012 by CPT REO L.L.C., as Assignee, is hereby **GRANTED**, and that the §362(a) automatic stay as to CPT REO L.L.C. should be and is hereby **TERMINATED** for "cause" pursuant to §362(d)(1).

The Clerk shall enter this Order on a separate document.

March _____, 2012

_____
JUDGE, U. S. BANKRUPTCY COURT

Distribution:
Debtor
Attorney Manning
Attorney Starks
Trustee
U. S. Trustee

21                          APPENDIX A